FEHLHABER CORPORATION et al., Claimants, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 47387.)

Court of Claims, February 15, 1967.

*Jarvis, Pilz & Norton* (*Charles B. Molineaux, Jr.,* of counsel), for claimants.   *Louis J. Lefkowitz, Attorney-General* (*Joseph T. Hopkins* of counsel), for defendant.

ALEXANDER DEL GIORNO, J.   This is one of a number of similar motions involving public contract work made by the State, requesting the court to dismiss the claim for the reason that it was not timely filed.   The motion is denied.

The State accepted the contract work on December 28, 1964. On August 27, 1965, the State forwarded to the claimant 10 copies of final *agreement* " for *your review* and signature ". The final agreement was neither signed nor certified.   A final estimate which was fully signed and certified as prescribed in the Public Works specifications and the standard Public Works agreement of the State was mailed to claimant on January 19, 1966 and received by claimant on January 21, 1966.

A notice of intention to file a claim was filed by the claimant on July 13, 1966.

We are called to determine whether the notice of intention was timely filed.   If we accept the August 27, 1965 mailing of the final agreement as the date when the damages were ascertainable and, therefore, the cause of action accrued, the notice of intention would have been filed too late.   However, we decide that the cause of action accrued only when the State mailed the certified, signed final estimate (standard Public Works agreement, art. 10, p. 25).   This article, as well as all Public Works specifications, has been drawn by the State for the State's protection and guidance.   Inasmuch as a noncompliance by a contractor with their provisions may result in the loss of the contractor's right to suitable compensation, we must consider

provisions of this kind in the nature of a probable punitive import, and should expect that the State literally comply with its own obligations before we call the contractor to account.

On January 30, 1967, on a motion in the claim of *Mount Vernon Contr. Corp.* v. *State of New York* (52 Misc 2d 781), upon an analogous set of facts, this court again decided against the State in a more extensive decision which is called to the attention of both sides herein.

We have stated above that this is one of many similar motions. We feel that the necessity for such motions could be easily obviated if the State would add a paragraph to the present provisions of article 10 of the standard Public Works agreement.

This article mandates the formulation by the engineer in charge of the job of a *final estimate* of all the work done from actual measurements and computations, and the value of such work under the contract, which, if approved, shall be *certified* by the *District Engineer*, with the right to the Superintendent to reject, amend and/or accept the same.

The provisions of article 10 are very clear and salutary, for when complied with, they leave no doubt as to what is the *definite* and final position the State assumes regarding the final amount due to the contractor.

We have suggested possible changes, in our recent opinion in the *Mount Vernon Contr. Corp.* case (*supra*), to which we offer another in this decision. We feel that the provision should go one step further by adding another paragraph thereto, substantially as follows: " The Superintendent, upon final approval of said Final Estimate, will forward the same to the Contractor with a note that payment of the amount indicated therein will be recommended to the Comptroller. Should the Contractor find the Final Estimate unacceptable, his time to seek redress in the Court of Claims will commence as of the day of receipt of said Final Estimate. "

Inasmuch as the State lets out many hundreds of public contracts, including hundreds of millions in dollars, of which many take weeks and months to try, it is most important that technicalities be eliminated or reduced whenever possible in order that necessary time be devoted to solving of issues involving basic differences rather than to a fencing match wherein the adversary, intentionally or not, may be pierced below the belt.